A91A2207. OWENS-ILLINOIS, INC. v. CHAMPION.
(417 SE2d 703)

BEASLEY, Judge.

In this workers' compensation case, we granted the application of the employer and self-insurer for discretionary appeal in order to decide whether the superior court erred in holding them liable for an employee's medical expenses which, they argue, were unauthorized under OCGA § 34-9-201 and the line of cases represented by *Boaz v. K-Mart Corp.,* 254 Ga. 707 (334 SE2d 167) (1985).

*The law*

OCGA § 34-9-201 (b) requires an employer to maintain a posted list of at least three physicians reasonably accessible to employees. Under OCGA § 34-9-201 (c), an employee may select the services of

any of the physicians on this panel of physicians, and the physician selected may arrange for referrals; the employer is not responsible for medical services furnished by any physician or other person selected by the employee in disregard of subsection (c), unless "due to an emergency or similarly justifiable reason, an inability to make a selection results." OCGA § 34-9-201 (d) authorizes the board to order a change of physician or treatment upon the request of an employee or employer.

*Boaz* applied these statutory rules as well as the exception recognized in *Georgia Power v. Brasill,* 171 Ga. App. 569 (1) (320 SE2d 573) (1984), aff'd 253 Ga. 766 (327 SE2d 226) (1985). There, and in *Boaz,* the employee was "cut off" from receiving medical benefits by discharge from treatment by the authorized physician. This entitled the employee to see any doctor if he was still in need of treatment for the work-related injury.

### The facts, as found by the ALJ

Champion was employed by Owens-Illinois as a forklift operator. On March 18, 1987, she was in the back of a truck attempting to secure a load when the truck began to drive away from the loading dock. While attempting to jump from the truck to the loading dock, she fell approximately five feet to the ground, injuring primarily her left side.

The following day, she received treatment from a physician listed on the employer's posted panel of physicians. He diagnosed her condition as a lumbar strain and contusion of the left wrist, left forearm, and left ankle, and he released her to return to light-duty work on March 20.

She continued to complain of physical pain and symptoms, and she was referred to a succession of physicians who, despite extensive diagnostic testing, could establish no physical injury beyond a strain. The only mental health care provider to whom she was referred was Dr. Garrett, a psychiatrist, who performed an independent examination but did not render treatment. Dr. Loughlin, an orthopedic surgeon, was of the opinion that Champion was able to return to work as a forklift operator and did not schedule a follow-up appointment, thereby dismissing her from treatment.

On June 4, 1987, Champion obtained unapproved treatment from a medical clinic that referred her to Dr. George, a Ph.D. psychologist, who she began seeing in April 1988. He in turn referred her to Dr. Cheatham, a psychiatrist, who she began seeing in September 1988.

On November 16, 1987, Champion was seen by Dr. McLeod, an orthopedist, who provided ongoing medical treatment. As of January 1, 1989, Owens-Illinois agreed to pay prior medical expenses incurred

by Champion from unapproved medical providers, in exchange for Champion's agreeing that Dr. McLeod would be her authorized treating physician and that Owens-Illinois would not be liable for additional charges by other medical providers.

Champion stopped working during the latter part of February 1989. She testified that she could no longer work because of her injuries as well as anxiety and depression. She was not being treated by Dr. McLeod, and she continued to be treated by Dr. George. (She testified that she also continued to be treated by Dr. Cheatham.) On March 7, 1989, she was admitted to Brawner Psychiatric Institute on a voluntary basis, on a referral from Dr. George, whom she advised that she was severely depressed and potentially suicidal. She remained there for approximately two months. The discharge summary stated that Dr. George had recommended hospitalization for reevaluation of Champion's physical and mental state and adjustment of her medication.

Champion sought reimbursement for medical expenses charged by Dr. George, Dr. Cheatham, and Brawner Psychiatric Institute, among others, for services rendered after January 1, 1989.

Although the ALJ found that Champion's current mental condition is the result of her work-related physical injuries aggravating preexisting psychological problems and personality disorders suffered by her, he denied her claims for reimbursement. He agreed that Dr. Loughlin terminated Champion's treatment within the meaning of *Boaz,* thereby entitling her to seek medical treatment from a physician of her own choosing. He found that Champion relinquished this right when she agreed to have Dr. McLeod become her authorized treating physician. Champion testified that she would have sought treatment from Dr. McLeod during this time period but was unaware that she was authorized to do so. The ALJ found that any fault for this misunderstanding was that of the employee or her counsel, and that there was no evidence that after the parties' agreement the employer had failed to provide medical treatment.

Finally, the ALJ concluded that the employee's psychiatric hospitalization at Brawner did not constitute an "emergency" under OCGA § 34-9-201 (c). He noted that the employee did not attempt or threaten to commit suicide and that she had suicidal ideations in the past and hospitalization was not required.

The award of the ALJ was made the award of the Full Board.

*The superior court's decision*

The superior court reversed in part, stating in its order: Champion should be reimbursed for the expenses charged by Brawner, as well as Drs. George and Cheatham, in that the employer, by designat-

ing Dr. McLeod as the employee's authorized treating physician as of January 1, 1989, failed in its obligation to provide mental health services, thereby authorizing the employee to continue in the care of Drs. George and Cheatham under *Boaz*. Dr. McLeod recognized that the employee required continuing mental health treatment and thereby implicitly authorized Drs. Cheatham and George to continue their ongoing treatment. Whether a medical emergency exists is a question of sound medical judgment or opinion, and the ALJ erred as a matter of law in finding that the psychiatric hospitalization did not qualify as a medical emergency.

## The appeal

1. The superior court's order that the employer reimburse the claimant for the contested medical expenses, essentially on the ground that there had been a referral by Dr. McLeod, is not supported by the evidence. There is no evidence of a referral by Dr. McLeod after January 1, 1989, or that the employee had even sought treatment from Dr. McLeod after that date. There is a basis for the ALJ's finding of an agreement that the claimant would not be reimbursed for these expenses. At the hearing before the ALJ, after employee's counsel stated certain facts "in his place" related to treatment, counsel for the employer similarly related, after inviting contradiction if there was any, that the parties had agreed that the authorized treating physician thereafter would be Dr. McLeod, with certain exceptions not in issue here. Employee's counsel responded that the January 1989 agreement, when "we wanted to try to get her back to work," was to have her see Dr. McLeod. Claimant testified that she just did not go back to Dr. McLeod. There is no evidence that Dr. McLeod discharged her. The evidence supports the ALJ's finding.

The superior court erred in disregarding it. "When there is any evidence to support the Board of Workers' Compensation's findings of fact, neither the Superior Court nor the Court of Appeals has authority to substitute itself for the Board as a fact-finding body, and to set aside an award based on the Board's findings. [Cits.]" *City of Atlanta v. Walker,* 169 Ga. App. 34, 35 (311 SE2d 479) (1983).

2. Whether an emergency exists is a question of fact, also to be resolved by the ALJ or the Board. Ibid. The fact that resolution of this question might be ultimately dependent upon a medical diagnosis does not alter this rule. *Armstrong v. Allstate Ins. Co.,* 135 Ga. App. 278 (1) (217 SE2d 486) (1975), upheld the board's finding that medical treatment was of an emergency nature, even though the treating physician had testified that the procedure was elective surgery. In this case, the evidence authorized the conclusion that an emergency did

not exist.

*Judgment reversed. Carley, P. J., and Johnson, J., concur.*

DECIDED MARCH 18, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992 — ▮▮▮▮▮▮▮▮▮

*Wilson, Strickland & Benson, Earl B. Benson, Jr., Samuel T. Brannan III,* for appellant.
*Charles E. Moore, Jr.,* for appellee.